

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FAISAL PUCKETT** | **CIVIL ACTION** |
| versus | **NO. 04-3507** |
| **TIM WILKINSON** | **SECTION: "K" (1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Faisal Puckett, is a state prisoner incarcerated at the Winn Correctional Center, Winnfield, Louisiana. On October 2, 2001, he was convicted of armed robbery in violation of La.Rev.Stat.Ann. 14:64.[2] On October 17, 2001, he was sentenced to a term of thirty years imprisonment, without benefit of parole, probation, or suspension of sentence.[3] On December 11, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[4] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[5] which was denied on December 10, 2004.[6]

On December 19, 2004, petitioner filed this federal application for *habeas corpus* relief.[7] In support of his application, he raises the following claims:

    1.    The trial court did not show a videotape of the robbery;

    2.    Petitioner was compelled to testify on his own behalf;

    3.    Petitioner's rights were violated because he was compelled to testify before a defense witness;

---

[2] State Rec., Vol. II of III, transcript of October 2, 2001, p. 115; State Rec., Vol. I of III, minute entry dated October 2, 2001; State Rec., Vol. I of III, jury verdict form.

[3] State Rec., Vol. II of III, transcript of October 17, 2001, p. 2; State Rec., Vol. I of III, minute entry dated October 17, 2001.

[4] State v. Puckett, No. 2002-KA-0203 (La. App. 4th Cir. Dec. 11, 2002) (unpublished); State Rec., Vol. II of III.

[5] State Rec., Vol. III of III.

[6] State *ex rel.* Puckett v. State, 888 So.2d 828 (La. 2004) (No. 2003-KH-3197); State Rec., Vol. III of III.

[7] Rec. Doc. 1.

> 4. Hearsay evidence was erroneously admitted at trial;
>
> 5. The trial court erred in not allowing petitioner to introduce court records to refute the testimony of a rebuttal witness;
>
> 6. Petitioner's rights were violated when he was not allowed to call an alibi witness to testify; and
>
> 7. The trial court erred in not holding an evidentiary hearing on petitioner's motion for a new trial.

The state takes the position that petitioner's federal application is timely filed[8] but that he failed to exhaust his state court remedies with respect to some of his claims.[9] However, federal law "allows a federal court, in its discretion, to *deny habeas relief* on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original). In this case, all of petitioner's claims are utterly devoid of merit. Therefore, even if some of those claims are not properly exhausted, the undersigned recommends that petitioner's federal application be denied on the merits in the interest of judicial economy.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

---

[8] Rec. Doc. 13, p. 4.

[9] Rec. Doc. 13, pp. 4-6.

questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> On 20 August 2000, Officer George Wichser responded to a complaint of an armed robbery at Dat's Supermarket Food Store, at 1600 Magazine Street. On arrival, Wichser met with the two victims, Mr. Vo and Mr. Pham. They related that two armed men wearing bandanas had robbed them. Lieutenant Christy Williams was assigned the follow up investigation of the robbery. She arrived on the scene shortly after Officer Wichser and learned that Mr. Pham was behind the counter at the cash register and that Mr. Vo was baking cookies when the two men entered. The first man held Mr. Vo at gunpoint, and the second subject held Mr. Pham at gunpoint, demanded money from the register, and robbed him of his jewelry as well. While the second man was robbing Mr. Vo, his bandana slipped down and the two victims recognized him as a customer. Mr. Vo knew where the subject's mother and stepdaughter lived and he showed Lieutenant Williams the house.
> Lieutenant Williams was able to develop a suspect from the description and the location provided, and compiled a photographic lineup from which Mr. Vo positively identified the defendant as the perpetrator of the armed robbery. Lieutenant Williams subsequently obtained an arrest warrant for the defendant, who was arrested without incident on 1 December 2002, at his mother's apartment.
> Hoang Van Vo testified that he was in the kitchen area of his establishment when the perpetrators entered. He heard one of the men tell the cashier, "This is not a game. Put all the money in the bag." The other subject came to the kitchen and told him not to move. Mr. Vo tried to hide from the gun, but the man told him to get up. Mr. Vo stated that the first subject took the bag and then saw a gold chain and told the cashier to "Put the gold chain in the bag too. And empty your pocket." He said that they did not take anything from him because he did not have anything. Mr. Vo said that as the first man was walking out, his bandana dropped down and Mr. Vo was able to see his entire face.
> Mr. Vo stated that he had worked at the store for six years and that he had seen the defendant come to the store every night to buy cigarettes. Mr. Vo said that he knew several members of the defendant's family and that he had passed his house on the way to

make purchases. He showed the house to the police. Mr. Vo identified the defendant in court.

The defense called Shirley Quest, the defendant's mother. She testified that she learned that there was a warrant for her son's arrest for armed robbery and that she was the one who called and informed the police of his location. Ms. Quest related that she did not want her son possibly hurt when being arrested for a crime she knew he had not committed because he was with her all day.

The defendant took the stand in his own defense and testified that on the day of the robbery he was at his mother's house, where he was living at the time, watching movies with his family. He recalled that the day was stormy and that his mother, father, and little brother were at the house.

Defendant stated that he had been going to Mr. Vo's store for some eight or nine years. He testified that the store had a number of video cameras on the inside. He stated that he had been to the store on three or four occasions after the date of the robbery.

Shirley Quest also testified that her son had been home at the time of the robbery. She stated that they were watching movies and also recalled that it had been quite stormy that day.

On rebuttal, the state called Clem Hebert, an investigator with the District Attorney's Office. He testified that he took a taped statement from Ms. Keisha Edgard, who had been the defendant's girlfriend at the time of the robbery, relative to a conversation she had had with the defendant's mother. The state then played the tape for the jury. On the tape, Ms. Edgard said that Shirley Quest called her and asked her to be a witness for Faisal Puckett, and she told Ms. Quest that she would not come to court to commit perjury. Ms. Edgard related that Shirley Quest stated that she would have a subpoena sent out. Ms. Edgard also related that Shirley Quest delivered a subpoena. She stated she knew this because her neighbor described the truck to her. Ms. Edgard recalled the day of the robbery and stated that she was working and did not see Mr. Puckett until perhaps very late in the evening.

The defense asked the court to call the courtroom clerk in surrebuttal to introduce the subpoena served on Ms. Edgard. The trial court denied the request.[10]

---

[10] State v. Puckett, No. 2002-KA-0203, at pp. 1-4 (La. App. 4th Cir. Dec. 11, 2002) (unpublished); State Rec., Vol. II of III.

### Videotape

Petitioner's first claim is that the trial court did not show a videotape of the robbery. This claim is meritless for several reasons. First, obviously, a trial court does not *sua sponte* present evidence during trial. Second, even if such a videotape existed, the prosecution was under no obligation to use it as evidence in presenting its case. Third, while defense counsel could attempt to introduce such a videotape at trial, the trial court did not prevent such an attempt in this case because defense counsel made no such effort. Fourth, and most importantly, it appears that no such videotape exists. One of the victims, Mr. Vo, testified that there was no videotape in the store's surveillance camera at the time of the robbery.[11]

### Petitioner's Testimony

Petitioner next claims that he was compelled to testify at trial. He also claims that his rights were violated because he was compelled to testify before his mother, Shirley Quest, testified. Those claims stem from defense counsel's apparent confusion over the extent to which Quest would be allowed to testify as an alibi witness. On direct appeal, petitioner argued that the trial court ruled that Quest could not testify as an alibi witness. The Louisiana Fourth Circuit Court of Appeal correctly noted that there was no such ruling, holding:

> The record reflects that when defense counsel initially called Shirley Quest the state objected on the basis that the defendant had failed to provide a notice of alibi identifying this witness. The defense argued that the state had failed to make a written demand for notice as provided by La.C.Cr.P. art. 727. While the trial court's ruling on the state's motion allows Ms. Quest to testify as to the alibi defense, it is apparent that defense counsel considered the court's ruling to be that Ms. Quest could not testify regarding defendant's

---

[11] State Rec., Vol. II of III, transcript of October 2, 2001, p. 28.

> alibi. However, for whatever reason, Ms. Quest was recalled and did testify that her son was with her at the time of the robbery.
>
> The trial court's ruling is expressed in the following statements from the record:
>
>> **By the Court:** The only thing I'm dealing with right now – I'm going to give you a little hook. I'm going to let her deal with any of the alibi stuff, if it is necessary.
>>
>> \* \* \*
>>
>> **By the Court:** I will allow her to testify on this. Anything other than the alibi, Mr. Fazande I will –
>>
>> **By Mr. Fazande:** Part of her testimony is concerning her sixth sense to call the police and the reason why she called the police.
>>
>> **By the Court:** That has nothing to do with the alibi. I will allow her to testify relative to the alibi of Mr. Puckett on the day of this incident.
>
> Furthermore, Ms. Quest testified during her first appearance on the stand that she knew that her son did not commit the crime because he was with her. Accordingly, the assignment of error is without merit.[12]

The Louisiana Fourth Circuit Court of Appeal then went on to reject petitioner's related claim that he was compelled to take the stand by virtue of the fact that the trial court refused to allow Shirley Quest to present alibi testimony, holding:

> As noted in our disposition of defendant's second assignment of error, the trial court did not limit Ms. Quest's testimony as suggested. In any case, defendant contends that when his mother was prevented from testifying regarding the alibi, the option not to testify was taken away from him as he had no other means to present his defense. As noted with respect to the second assignment of error,

---

[12] Puckett, No. 2002-KA-0203, at pp. 4-5; State Rec., Vol. II of III.

> Shirley Quest did in fact testify on direct examination that she knew her son did not commit the crime because he was with her, and confirmed this testimony on subsequent examination. Nevertheless, the defendant did testify on his own behalf prior to Shirley Quest testifying regarding the defendant's exact whereabouts.
>
> Under the circumstances of this case it is difficult to find that defendant's decision to take the stand and testify in his own defense was made under compulsion. Compulsion necessarily includes the element of being forced against one's will. Defendant was not coerced. He freely made his decision based on the circumstances as they presented themselves. Furthermore, it appears that defendant's chief complaint is that he testified prior to and without the benefit of having heard his mother's testimony.
>
> We find no violation of defendant's privilege. Furthermore, defendant does not suggest any prejudice from having testified. The assignment or [sic] error is without merit.[13]

These claims have no merit. Petitioner was called to testify by defense counsel, and petitioner voiced no objection to testifying. To the extent that petitioner may have felt it was necessary for him to testify because of a mistaken belief that his mother would not be allowed to testify as an alibi witness, that mistaken belief was not engendered by any action of either the trial court or the prosecution and did not render his testimony "involuntary" or "compelled" in a constitutional sense.[14] To have petitioner testify, and to do so before his mother was recalled to the

---

[13] Puckett, No. 2002-KA-0203, at pp. 8-9; State Rec., Vol. II of III.

[14] The United States Fifth Circuit Court of Appeals has noted:

> The Fifth Amendment protects the individual from being "*compelled* in any criminal case to be a witness against himself." (Emphasis added.)
>
> To be compelled is to be *subjected* to some coercion, fear, terror, inducement, trickery or threat – either physically or psychologically, blatantly or subtly. The hallmark of compulsion is the presence of some operative force producing an involuntary response. Compulsion is not present where the act proceeds from the exercise of choice or free will, self-impelled and freely undertaken, and unconstrained by interference. And, of course, the response must be free from improper influences (e.g., fear, ignorance, trickery, etc.) such as would render it less

stand, was a strategic choice, albeit perhaps one based on a mistaken perception of the judge's ruling, which in no way rendered petitioner's conviction constitutionally invalid.

## Hearsay

In his federal application, petitioner states without elaboration that his rights were violated when hearsay testimony was introduced at trial. Based on petitioner's state court applications, this Court assumes that he is referring to the introduction of the audiotaped interview of Keisha Edgard.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim that the trial court erred in allowing the prosecution to play the audiotape, holding:

> Defendant contends this tape was inadmissible hearsay. "Hearsay" is a statement other than one made by the declarant while testifying at the present trial or hearing offered in evidence to prove the truth of the matter asserted. La. C.E. Art. 801. The state contends the tape was admissible as it served to impeach the testimony of Shirley Quest and as extrinsic evidence under La. C.E. art. 607(D)(1) or (D)(2). The substance of Ms. Edgard's statements was clearly relevant to Shirley Quest's credibility and served to impeach her trial testimony, and constitutes evidence tending to show Ms. Quest's bias or corruption. As such, it is admissible under La.C.E. 607(D)(1).
>
> Although defendant observes that the trial court's action allowing the state to play the tape was error, he fails to suggest that he was prejudiced by the admission of the tape, nor does he discuss the impact of the evidence on whether he received a fair trial. Furthermore, the defense did not ask the trial court to give the jury an instruction limiting Ms. Edgard's statement. See La. C.E. art. 105.

---

> than the exercise of unfettered free will.
> When a Defendant, effectively represented by competent counsel, takes the stand to testify, he does so invariably as his own proffer of evidence. The act is voluntary, it is not solicited by the other side.

United States v. Escandar, 465 F.2d 438, 441-42 (5th Cir. 1972) (emphasis in original).

> Defendant has not shown and we have not found in our independent review of this record, that the use of the tape recording was erroneous or that, if erroneous, it would not be subject to harmless error analysis.
>
> The assignment of error is without merit.[15]

The United States Fifth Circuit Court of Appeals has held:

> In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law. However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.

Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim presents an issue of state law which is not reviewable in this federal proceeding.

Additionally, to the extent that petitioner is claiming that the alleged evidentiary error was so extreme that it rendered his trial fundamentally unfair, that claim has no merit. Even if the audiotape constituted hearsay evidence, it does not necessarily follow that petitioner is entitled to federal *habeas corpus* relief. As evident from the standard set forth above, "[t]he wrongful admission of hearsay evidence violates the Confrontation Clause only when the evidence was a crucial, critical or highly significant factor in the framework of the whole trial." Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997) (quotation marks and citations omitted). The audiotape clearly did not rise to that level in this case. The audiotape was offered merely as rebuttal evidence to impeach the testimony of petitioner's mother, who, even absent that impeachment evidence, was

---

[15] Puckett, No. 2002-KA-0203, at pp. 6-7; State Rec., Vol. II of III.

hardly a credible witness. The audiotape played little or no role in petitioner's conviction. Rather, petitioner was convicted based on the compelling testimony of the victim, who was able to identify petitioner based on the fact that he had long been a customer of the store robbed.

<u>Surrebuttal</u>

Petitioner next contends that the trial court erred in not allowing petitioner to introduce court records to refute the testimony of a rebuttal witness. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> The record reflects that defendant wished to call the Division "A" docket clerk relative to the issue of who served the subpoena upon Ms. Edgard.
> Defendant contends that in some instances the failure to allow a defendant surrebuttal can be reversible error. In <u>State v. George</u>, 95-0110, p. 13 (La. 10/16/95), 661 So.2d 975, 981, the court held that when new facts or issues are adduced on rebuttal, a trial judge has the discretion to permit the introduction of additional defense evidence prior to closing argument. La. Code Crim. P. art. 765(5). An abuse of discretion resulting in prejudice to a defendant's presentation of a defense or impingement of his right to impeach the credibility of state witnesses constitutes reversible error. La. Const. art. I, § 16; <u>State v. Harper</u>, 93-2682, pp. 7, 8 (La. 11/30/94), 646 So.2d 338, 342-43. However, defendant does not assert any basis for a conclusion that this alleged error would require reversal. Rule 2-12.4 of the Uniform Rules of Louisiana Courts of Appeal provides in pertinent part:
>
>> "... All specifications of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed...."
>
> Because defendant does not address the issue presented and does not demonstrate that the failure to allow the clerk to testify contributed to the verdict, we consider it abandoned and the assignment of error without merit.[16]

---

[16] <u>Puckett</u>, No. 2002-KA-0203, at pp. 7-8; State Rec., Vol. II of III.

Because petitioner's claim was rejected on procedural grounds, it would appear that the claim is procedurally barred. However, the state has not raised the procedural bar. While a federal *habeas* court has the discretion to raise a procedural default *sua sponte*, it is not required to do so. See Magouirk v. Phillips, 144 F.3d 348, 357-58 (5th Cir. 1998). The Court declines to raise that possible defense *sua sponte* in this case, especially in light of the fact that the claim clearly fails on the merits. As noted previously, this Court's review of state court evidentiary rulings is limited to issues of constitutional dimension. State court evidentiary rulings, even if erroneous, do not warrant federal *habeas corpus* relief unless they are so extreme as to constitute a denial of fundamental fairness. Petitioner's challenge to the trial judge's discretionary ruling regarding surrebuttal evidence, which dealt with the largely irrelevant issue of who served the subpoena on Edgard, does not even begin to rise to that level.

### Alibi Witness

Petitioner claims, without elaboration, that his rights were violated when he was not allowed to call an alibi witness to testify. To the extent that petitioner is again referring to his mother, Shirley Quest, his claim is clearly baseless. As noted previously in this opinion, Quest was allowed to testify as an alibi witness. Moreover, if petitioner is not referring to Quest, it is not apparent to whom he is referring. The Court has reviewed the entire transcript, and in no instance was petitioner denied the opportunity to call an alibi witness. This claim has no merit.

### Evidentiary Hearing on Motion

Petitioner's last claim is that the trial court erred in not holding an evidentiary hearing on his motion for a new trial. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected this claim, holding:

> Defendant alleges that La. C.Cr.P. art. 852 and art. 853 mandate an evidentiary hearing. Article 852 provides that a motion for a new trial shall be tried contradictorily with the district attorney. Article 853 provides that a motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.
> Neither article mandates an evidentiary hearing in conjunction with a motion for new trial. Furthermore, the record reflects that the defendant did not request the opportunity to present testimony in conjunction with the motion, nor does he suggest here that he had evidence or testimony to present. Finally, there is nothing to indicate that the defendant was denied the opportunity to argue the motion. This ... assignment is without merit.[17]

The state courts found that state law does not require an evidentiary hearing on a motion for a new trial, and "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); see also Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal *habeas*); Dickerson v. Guste, 932 F.2d 1142, 1145 (a federal *habeas* court does not sit as a "super" state supreme court to review errors under state law). Moreover, because petitioner's claim implicates no federal constitutional right, he is not entitled to federal *habeas corpus* relief with respect to this claim. Johnson v. Puckett, 176 F.3d 809, 819 (5th Cir. 1999) ("In habeas review, we limit the issuance of the writ to those cases where there have been federal constitutional violations.").

---

[17] Puckett, No. 2002-KA-0203, at pp. 5-6; State Rec., Vol. II of III.

- 14 -

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Faisal Puckett be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-first day of July, 2005.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE